IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| TYRONE MARTIN, | ) | |
| | ) | |
| Plaintiff | ) | Case No. 1:18-215 Erie |
| | ) | |
| v. | ) | |
| | ) | |
| JOHN WETZEL, et al., | ) | RICHARD A. LANZILLO |
| | ) | UNITED STATES MAGISTRATE JUDGE |
| Defendant | ) | |
| | ) | OPINION ON DEFENDANTS' |
| | ) | MOTION TO DISMISS |
| | ) | [ECF NO. 39] |

MEMORANDUM OPINION

Nine individual defendants who are employees of the Pennsylvania Department of Corrections ("DOC Defendants") have moved to dismiss all claims of Plaintiff's Complaint against defendant John Wetzel and defendant Michael Overmyer, and the claims against all DOC Defendants to the extent those claims are asserted against them in their official capacities. ECF No. 39. For the reasons discussed below, the Court will grant the DOC Defendants' motion.[1]

I. Procedural History

Plaintiff Tyrone Martin, an inmate at the State Correctional Institution at Forest ("SCI-Forest"), commenced this civil rights action pursuant to 42 U.S.C. § 1983 by filing a Complaint alleging that the DOC Defendants violated his civil rights during and after an incident on May 29, 2018. ECF No. 5, pp 2-5. On December 18, 2018, the DOC Defendants moved pursuant to Federal Rule of Civil Procedure 12(b)(6) to dismiss (1) Plaintiff's claims against DOC Secretary

---

[1] The parties have consented to the jurisdiction of the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636. *See* ECF Nos. 9, 33.

1

John Wetzel and SCI-Forest Superintendent Michael Overmyer on the grounds that Plaintiff's Complaint fails to allege facts to show personal involvement of these Defendants in the actionable conduct alleged in the Complaint, and (2) all claims against the DOC Defendants in their official capacities as barred by Eleventh Amendment sovereign immunity. ECF. No. 40. Plaintiff responded to the motion on January 17, 2019. ECF No. 47. The motion has been fully briefed and is ripe for disposition.

II.     Factual Allegations

In his Complaint, Plaintiff alleges that on May 29, 2018, he experienced a "mental breakdown" and he asked Defendant Mrozek to "speak with someone from psychology." ECF No. 5, p. 2. He alleges that his pleas for help were ignored by both Defendant Mrozek and Defendant Kopp. *Id*. Instead of providing assistance, Defendant Kopp requested a "use of force team," which sprayed Plaintiff with one can of OC spray. *Id*. at pp. 2-3. After being sprayed, Plaintiff was treated by "Jane Doe (nurse)" who "acted with neglect as she only clean Plaintiff (sic) eyes and ignored Plaintiffs (sic) pleas." *Id*. at p. 3. Plaintiff was then threatened, handcuffed, and placed on the floor while naked for an anal cavity search. *Id*. Plaintiff was then returned to his cell with no shoes despite the floor being wet, where he was again "hit" and "touch[ed]" by the "use of force team." *Id*.

Plaintiff additionally alleges that Defendants Mason, Mrozek, and Jopp removed his legal materials and personal property from his cell, failed to provide him with a "153 Form," and sprayed his penis with OC spray. *Id*. at 3-4. Plaintiff was not allowed to decontaminate his body following the spray. *Id*. at 4. He was given a paper smock and returned to his cell, but was not

provided with shoes, a blanket, a mattress, or clothes from May 29, 2018 to June 5, 2018. *Id*. Plaintiff's feet became infected until he received "foot cream" on June 5, 2018. *Id*.

Plaintiff further alleges that "Superintendent sign off on the removal of Plaintiff clothes property and use a blind eye while viewing handheld video. Refusing to discipline underlings and worked together with all mention of a rogue body." *Id*. at 4. (errors in original). He also stated that various defendants "along with Superintendent threw away Plaintiffs property and legal work as a retaliatory tactic and then acted as if it occurred by mistake." *Id*. (errors in original). Finally, he stated that "John Wetzel although through plan channels directs his underlings to use any means of action and allows them to falsify document and then acts as if his knowledge is limited. However this listed defendant sent Plaintiff to what he called an SMU program as retaliation for Plaintiff filing cv-2060." *Id*. at 5. (errors in original).

III. Standards of Review

    1. *Pro se* Litigants

*Pro se* pleadings, "however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520-521 (1972). If the court can reasonably read pleadings to state a valid claim on which the litigant could prevail, it should do so despite failure to cite proper legal authority, confusion of legal theories, poor syntax and sentence construction, or litigant's unfamiliarity with pleading requirements. *Boag v. MacDougall*, 454 U.S. 364 (1982); *United States ex rel. Montgomery v. Bierley*, 141 F.2d 552, 555 (3d Cir. 1969) (petition prepared by a prisoner may be inartfully drawn and should be read "with a measure of tolerance"); *Smith v. U.S. District Court*, 956 F.2d 295 (D.C. Cir. 1992); *Freeman v. Dep't of Corrections*, 949 F.2d 360 (10th Cir. 1991). Under our liberal pleading

rules, during the initial stages of litigation, a district court should construe all allegations in a complaint in favor of the complainant. *Gibbs v. Roman*, 116 F.3d 83 (3d Cir. 1997). *See, e.g., Nami v. Fauver*, 82 F.3d 63, 65 (3d Cir. 1996) (discussing Fed. R. Civ. P. 12(b)(6) standard); *Markowitz v. Northeast Land Co.*, 906 F.2d 100, 103 (3d Cir. 1990) (same).

    2.  Motion to dismiss

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the complaint. *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993). In deciding a motion to dismiss, the court is not opining on whether the plaintiff will be likely to prevail on the merits; rather, the plaintiff must only present factual allegations sufficient "to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007) (citing 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, pp. 235-236 (3d ed. 2004)). *See also Ashcroft v. Iqbal*, 556 U.S. 662 (2009)). A complaint should only be dismissed pursuant to Rule 12 (b)(6) if it fails to allege "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570 (rejecting the traditional 12 (b)(6) standard established in *Conley v. Gibson*, 355 U.S. 41 (1957)). In making this determination, the court must accept as true all well-pled factual allegations in the complaint and views them in a light most favorable to the plaintiff. *U.S. Express Lines Ltd. v. Higgins*, 281 F.3d 383, 388 (3d Cir. 2002).

While a complaint does not need detailed factual allegations to survive a motion to dismiss, a complaint must provide more than labels and conclusions. *Twombly*, 550 U.S. at 555. A "formulaic recitation of the elements of a cause of action will not do." *Id.* (citing *Papasan v. Allain,* 478 U.S. 265, 286 (1986)). Moreover, a court need not accept inferences drawn by a

plaintiff if they are unsupported by the facts as set forth in the complaint. *See California Pub. Employee Ret. Sys. v. The Chubb Corp.*, 394 F.3d 126, 143 (3d Cir. 2004) (citing *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997)). Nor must the Court accept legal conclusions disguised as factual allegations. *Twombly*, 550 U.S. at 555. *See also McTernan v. City of York, Pennsylvania*, 577 F.3d 521, 531 (3d Cir. 2009) ("The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.").

Expounding on the *Twombly/Iqbal* line of cases, the Third Circuit has articulated the following three-step approach:

> First, the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.' Second, the court should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth.' Finally, 'where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.'

*Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 221 (3d Cir. 2011) (quoting *Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010)). This determination is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

IV. Analysis

  a. Personal Involvement of Defendants Wetzel and Overmyer

Liability under § 1983 requires a defendant's "personal involvement" in the deprivation of a constitutional right. *See Gould v. Wetzel*, 2013 WL 5697866, at *2 (3d Cir. Oct. 21, 2013). Accordingly, each defendant must have played an "affirmative part" in the complained-of misconduct. *Iqbal*, 556 U.S. at 677 ("In a § 1983 suit ... [a]bsent vicarious liability, each

Government official, his or her title notwithstanding, is only liable for his or her own misconduct."); *Oliver v. Beard*, 358 F. App'x 297, 300 (3d Cir. 2009). In the absence of specific allegations that a defendant played a role in depriving the plaintiff of a constitutional right, dismissal is appropriate. *See, e.g., Mearin v. Swartz*, 951 F.Supp.2d 776, 781-82 (W.D. Pa. 2013) (dismissing claims pursuant to Rule 12(b)(6) because the plaintiffs had failed to set forth sufficient facts to establish that certain defendants had played an affirmative part in the alleged Eighth Amendment violation).

        i.        Plaintiff's Complaint Fails to Allege Facts Sufficient to Support Liability against Defendant Wetzel based upon Personal Involvement or Policy-Making Liability.

Plaintiff's theory of liability against Defendant Wetzel is two-pronged.[2] First, he raises a claim of supervisory liability by stating that Defendant Wetzel directed correctional officers to use excessive force and then falsify documents to cover up their actions. Plaintiff also asserts that Defendant Wetzel retaliated against him for filing a lawsuit by placing him in the "SMU Program." These theories will be addressed in turn.

Where the defendants are supervisory prison officials, liability must still be based on "personal involvement in the alleged wrongs." *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1998). Although a supervisor cannot encourage constitutional violations, "a supervising public official has [no] affirmative constitutional duty to supervise and discipline so as to prevent violations of constitutional rights by his or her subordinates." *Chinchello v. Fenton*, 805 F.2d

---

[2] Plaintiff's allegations directed at Defendant Wetzel are as follows:

> "John Wetzel although through plan channels directs his underlings to use any means of action and allows them to falsify document and then acts as if his knowledge is limited. However this listed defendant sent Plaintiff to what he called an SMU program as retaliation for Plaintiff filing cv-2060."

ECF No. 5, p. 5. (errors in original).

126, 133 (3d Cir. 1986); *Brown v. Grabowski*, 922 F.2d 1097, 1120 (3d Cir. 1990). Nor can § 1983 liability be predicated solely on the theory of *respondeat superior*. *Rizzo v. Goode*, 423 U.S. 362 (1976); *see also Monell v. Department of Social Services*, 436 U.S. 658 (1978) (superiors of line officers who act in violation of constitutional rights may not be held liable on a theory of vicarious liability merely because the superior had a right to control the line officer's actions); *Robinson v. City of Pittsburgh*, 120 F.3d 1286, 1293-95 (3d Cir. 1997) (holding that § 1983 plaintiff is required to show that supervisor personally participated in violating her rights, that he directed others to violate her rights, or that he had knowledge of and acquiesced in his subordinates' violations).

Courts have identified two general instances where either the conduct of a supervisor-defendant or the policies/procedures of a supervisor-defendant may subject a supervisor to liability for a constitutional tort committed by a subordinate. First, supervisory liability may attach if the supervisor personally "participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced" in a subordinate's unconstitutional conduct. *A.M. ex rel. J.M.K. v. Luzerne Cnty. Juvenile Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004) (citing *Baker v. Monroe Twp.*, 50 F.3d 1186, 1190-91 (3d Cir. 1995)). Second, liability may attach if the supervisor, "with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused [the] constitutional harm." *Id.* (quoting *Stoneking v. Bradford Area Sch. Dist.*, 882 F.2d 720, 725 (3d Cir. 1989)).

Regarding the first "general instance," Plaintiff stated that Defendant Wetzel "directs his underlings to use any means of action[.]" ECF No. 5, p. 5. But Plaintiff alleged no facts to support a plausible inference that Defendant Wetzel directed or acquiesced in any of the actions

7

allegedly committed by subordinates against Plaintiff. Vague, conclusory, and unsubstantiated claims such as these do not provide a basis on which a plaintiff can rely to defeat a motion to dismiss. *See California Pub. Employee Ret. Sys. v. The Chubb Corp.*, 394 F.3d 126, 143 (3d Cir. 2004) (a court need not accept inferences drawn by a plaintiff if they are unsupported by the facts as set forth in the complaint).

The Court also finds that the Complaint fails to support a based upon the second general instance where supervisory liability may apply. In order for supervisory liability to attach, Plaintiff must allege facts to support a plausible inference that Defendant Wetzel "established and maintained a policy, practice or custom which directly caused [the] constitutional harm." *A.M. ex rel. J.M.K.*, 372 F.3d at 586. As stated above, Plaintiff provided one single allegation related to Defendant Wetzel, centered on the assertion that Defendant Wetzel directed subordinates to use "any means of action." Again, however, this conclusory assertion is factually unsupported and therefore insufficient to survive the instant motion to dismiss. *See, e.g., Sloan v. Pa. Dept. Corr.*, 2017 WL 9487087 (W.D. Pa. Aug. 16, 2017) ("Conclusory, vague, and speculative allegation of custom, policy or practice is insufficient under *Twombly* and *Iqbal*."). Because Plaintiff has failed to plead facts to support the applicability of either "general instance" of personal involvement of Defendant Wetzel, all claims against him based upon supervisory liability must be dismissed.

Plaintiff also claims that Defendant Wetzel "sent Plaintiff to what he called an SMU program as retaliation for Plaintiff filing cv-2060." ECF No. 5, p. 5 (errors in original). The Court construes this statement to allege that Defendant Wetzel retaliated against Plaintiff for exercising his First Amendment right to file a lawsuit. However, the Court finds that Plaintiff

has failed to properly plead a claim of retaliation. In order to establish illegal retaliation for engaging in protected conduct, a plaintiff must allege that: (1) his conduct was constitutionally protected; (2) he suffered an adverse action at the hands of prison officials; and (3) his constitutionally protected conduct was a substantial or motivating factor in the decision to take the adverse action. *Watson v. Rozum*, 834 F.3d 417, 422 (3d Cir. 2016) (citing *Rauser v. Horn*, 241 F.3d 330, 333-34 (3d Cir. 2001)). Retaliatory motive can be inferred from either: (1) an unusually suggestive temporal proximity between the protected activity and the alleged retaliatory action; or (2) a pattern of antagonism coupled with timing that suggests a causal link. *Id*. (citing *Lauren W. ex rel. Jean W. v. DeFlaminis*, 480 F.3d 259, 267 (3d Cir. 2007)).

The Court understands Plaintiff's reference to "cv-2060" to mean that Plaintiff filed a lawsuit, which is protected activity. However, Plaintiff provides no details as to when he filed "cv-2060," the identity of the defendant or defendants named in that lawsuit, the nature of the claim or claims asserted in that lawsuit, or when Defendant Wetzel "sent" Plaintiff to the SMU. Absent such facts, the Court cannot determine whether a retaliatory motive plausibly may be inferred based on temporal proximity between the protected conduct and the allegedly retaliatory action. *See Watson*, 834 F.3d at 422. Because Plaintiff's Complaint lacks such facts, the Court finds that Plaintiff has failed to adequately plead a claim of retaliation, and that this claim must be dismissed.

    ii.    Plaintiff's Complaint Fails to Allege Facts Sufficient to Support Liability against Defendant Overmyer based upon Personal Involvement or Policy-Making Liability.

The Court reaches the same conclusion with regard to Defendant Overmyer, the Superintendent of SCI-Forest. Plaintiff alleges that Defendant Overmyer "sign off on the

removal of Plaintiff clothes property and use a blind eye while viewing handheld video. Refusing to discipline underlings and worked together with all mention of a rogue body." ECF No. 5, p. 4. (errors in original). He further alleges that various defendants "along with Superintendent threw away Plaintiffs property and legal work as a retaliatory tactic and then acted as if it occurred by mistake." *Id*. (errors in original).

The Court will analyze these allegations in turn. First, the Court finds that Plaintiff's allegation that Defendant Overmyer turned a "blind eye" after reviewing "hand held video footage" is insufficient to establish supervisory liability. As this allegation reflects, Plaintiff is complaining about the adequacy of Overmyer's response to the alleged misconduct of other personnel. Actions or omissions after the fact could not have "directly caused" the constitutional harm. *See Philadelphia Fed'n of Teachers v. Sch. Dist. of Philadelphia*, 1998 WL 196403, at *5 (E.D. Pa. Apr. 23, 1998); *see also Leary v. Daeschner*, 349 F.3d 888, 907 (6th Cir. 2003) ("simple awareness of employee misconduct does not lead to supervisory liability.").

Regarding Plaintiff's allegation that Defendant Overmyer "signed off" on the removal of his property, the Court finds that an allegation of approval of removal of Plaintiff's property from his cell, without more, fails to state a constitutional violation. Plaintiff has not alleged what the property was, why it was taken, facts to support an inference that the confiscation was pretextual, or any other facts sufficient to allow the Court to find a plausible constitutional claim. Given that Plaintiff has failed to state a claim based on subordinates' removal of his property, Defendant Overmyer cannot be liable for "signing off" on the same.

Regarding the retaliation portion of Plaintiff's claims against Defendant Overmyer, the Court reaches the same conclusion as above. Specifically, Plaintiff has failed to plead the facts to support the elements of a retaliation claim. *See Watson*, 834 F.3d at 422.[3]

Dismissal of all claims against Defendants Overmyer and Wetzel is warranted.

b. Eleventh Amendment Immunity Applies to All DOC Defendants to the extent Plaintiff Asserts Claims against Them in their Official Capacities.

The Eleventh Amendment to the United States Constitution proscribes actions in the federal courts against states, their agencies, and state officials acting within their official capacities. *Kentucky v. Graham*, 473 U.S. 159, 165-67 (1985); *Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89 (1984). The DOC and the facilities that comprise the DOC are agencies or arms of the Commonwealth of Pennsylvania and, as such, they are entitled to Eleventh Amendment immunity unless an exception to such immunity applies. *See Steele v. Pennsylvania*, 2009 WL 614800, at *8 (W.D. Pa. March 6, 2009); s*ee also O'Donnell v. Department of Corrections*, 790 F. Supp 2d 289, 305 (M.D. Pa. 2011) (Eleventh Amendment immunity extends to DOC employees who are sued in their official capacities).

Eleventh Amendment sovereign immunity is subject to three exceptions:

> (1) Congress may specifically abrogate a state's sovereign immunity by exercising its enforcement power under the Fourteenth Amendment; (2) a state may waive its sovereign immunity by consenting to suit; or (3) under *Ex parte Young*, 209 U.S. 123 (1908), a state official may be sued in his or her official capacity for prospective injunctive relief.

---

[3] To the extent that the Court construes Plaintiff's allegation to constitute an access to court claim, it likewise finds that Plaintiff has failed to plead facts sufficient to support a plausible inference that he suffered an actual injury, which is an essential element to such a claim. *See Tinsley v. Gloria*, 369 Fed. Appx. 378, 381 (3d Cir. 2010) (the plaintiff must also demonstrate that the denial of access actually caused the alleged injury to occur).

11

*See Coll. Sav. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666, 670 (1999); *Koslow v. Pennsylvania*, 302 F.3d 161, 168 (3d Cir. 2002); *Hindes v. FDIC*, 137 F.3d 148, 165-66 (3d Cir. 1998). With respect to the first exception, it is well-settled that Congress did not intend to abrogate the states' sovereign immunity by enacting § 1983. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 66 (1989). As to the second exception, Pennsylvania has unequivocally withheld its consent to such suits. Section 8521 of Title 42 of the Pennsylvania Consolidated Statutes clearly states, "Nothing contained in this subchapter shall be construed to waive the immunity of the Commonwealth from suit in Federal courts guaranteed by the Eleventh Amendment of the Constitution of the United States." 42 Pa. Cons.Stat.Ann.§ 8521(6); *see also Lombardo v. Pennsylvania*, 540 F.3d 190, 196 n.3 (3d Cir. 2008); Pa.Const.Art. I, .§ 11; 1 Pa.Cons.Stat.Ann. §231O; *Lavia v. Department of Corrections*, 224 F.3d 190, 195 (3d Cir. 2000). Because no exception to Eleventh Amendment immunity applies here, all claims against the DOC Defendants in their official capacities must be dismissed from this action.

V.     LEAVE TO AMEND

The Third Circuit has instructed that if a civil rights complaint is vulnerable to dismissal for failure to state a claim, the Court should permit a curative amendment, unless an amendment would be inequitable or futile. *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002). This instruction is equally applicable to *pro se* litigants and those represented by counsel. *Alston v. Parker*, 363 F.3d 229, 235 (3d Cir. 2004).

The Court finds that amendment may not be futile regarding the claims directed at Defendants Overmyer and Wetzel. Many, if not all of the pleading defects highlighted above

stem from Plaintiff's vagueness and lack of detail. For that reason, Plaintiff is granted leave to file an amended complaint with regard to those two Defendants on or before October 4, 2019.

The Court reaches a different conclusion with regard to the claims against the DOC Defendants in their official capacities. These claims are barred by Eleventh Amendment immunity as a matter of law, and no amendment to aver additional facts can conceivably alter this conclusion. Accordingly, amendment would be futile.

Plaintiff is reminded that an amended complaint "must be complete in all respects. It is a new pleading which stands by itself as an adequate complaint without reference to the complaint already filed." *Williams v. Ferdarko*, 2018 WL 3653272, at *1 n. 1 (W.D. Pa. Aug. 1, 2018).

## VI. CONCLUSION

For the foregoing reasons, the DOC Defendants' Motion to Dismiss (ECF No. 39) is GRANTED. Plaintiff's claims against Defendants Wetzel and Overmyer are dismissed without prejudice to Plaintiff's right to file an amended complaint. All claims against the DOC Defendants in their official capacities are dismissed with prejudice.

RICHARD A. LANZILLO
United States Magistrate Judge

Dated: September 14, 2019