IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

TYRONE MARTIN,                        )
                                      )
        Plaintiff                     )        Case No. 1:18-cv-00215-RAL (Erie)
                                      )
vs.                                   )
                                      )        RICHARD A. LANZILLO
JOHN WETZEL, et al.                   )        UNITED STATES MAGISTRATE JUDGE
                                      )
        Defendants                    )
                                      )        MEMORANDUM OPINION ON
                                      )        PLAINTIFF'S MOTION FOR
                                      )        SANCTIONS
                                      )
                                      )        ECF No. 124, 125, 129, 132, 135
                                      )

I.      Introduction

        Plaintiff Tyrone Martin (Martin) has presented to the Court numerous filings requesting

sanctions against the Defendants for their purported failure to comply with discovery orders and

their failure to preserve video evidence.  He also includes in one of these motions for sanctions a

request for appointment of counsel.  For the following reasons, the motions for sanctions and

appointment of counsel are DENIED.  The court addresses each request in turn.

II.     Procedural History and Discovery Dispute

        Martin commenced this action alleging the unlawful use of force against him and destruction

of his property by employees of the Pennsylvania Department of Corrections (DOC) by filing a

Motion for Leave to Proceed *in forma pauperis*.  ECF No. 1.  His complaint was docketed on

August 27, 2020.  ECF No. 5.  Regarding discovery, on October 28, 2020, the Court granted in part

and denied in part ECF No. 109 Plaintiff's "Motion for an Order Compelling Discovery and

Sanction Request."  ECF No. 121.  Martin contended that the Defendants had failed to produce

certain video recordings of the use of force and related activities in and around his cell at SCI-Forest

on May 29, 2018.  ECF No. 129, p. 1.  Three cameras recorded video in the area of Martin's cell on

May 29, 2018.  There was a handheld camera that captured the whole incident, following the parties

through different parts of the prison.  There was a stationary DIVAR surveillance camera.  *Id.*

Videos from these two cameras have been preserved and provided to Martin during discovery.

During a telephone status conference and hearing held on October 27, 2020, Martin told the Court

that the third camera was a stationary camera facing his cell.  *Id.*, p. 2.  Following this hearing, the

Court wrote in the relevant part in its opinion that:

> The Court directed Defendants to investigate this assertion and to
> file a status report on or before November 10, 2020 advising (1)
> whether Defendants agree that another camera as described by
> Plaintiff was present in his cell on May 29, 2018, and, if so, (2)
> whether it was in operation on that date and, if in operation, (3) the
> status of preservation of the video record.  If video from this camera
> was recorded on the date in question and preserved, Defendants are
> to produce it to Plaintiff on or before November 10, 2020.  If video
> from this camera was recorded on the date in question and not
> preserved, Defendants are directed to include in their status report a
> full explanation regarding the failure to preserve the recording.
> Plaintiff's motion to compel production of the video recording discs
> is granted to the extent outlined above.

ECF No. 129, p. 2.

The Defendants' November 10, 2020 Status Report confirmed that a camera was mounted

outside of Martin's cell and would have recorded activities inside his cell.  ECF No. 131, ¶ 4.  Video

from this camera was retained for thirty days pursuant to Department of Corrections (DOC) policy

because of limited digital storage space.  *Id.*, ¶ 5.  This cell-door video was not preserved beyond the

thirty-day period, however.  The rationale for this failure was that preservation of cell-door video is

unnecessary where, as here, a hand-held video camera recorded the use of force incident.  This

apparently represents the position of the DOC even in situations where, as here, the inmate has

alleged wrongdoing on the part of corrections personnel. *Id.*, ¶¶ 6–8. Defendants explain that the

hand-held video camera produces video in color and has audio, whereas the stationary cell-door

video records only in black and white and without audio. *Id.*, ¶ 8. Defendants also assert that the

hand-held video recorded the entire incident; by contrast, "the cell-door camera would have been

useless due to Plaintiff having covered his cell window, blocking the camera's view." *Id.*, ¶ 9.

III.    Legal Standard for a Motion for Sanctions for Spoliation of Evidence

Martin contends that the Court should sanction the Defendants for failure to preserve

evidence, also called spoliation. "Spoliation is the destruction or significant alteration of evidence,

or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable

litigation." *Paramount Pictures Corp. v. Davis*, 234 F.R.D. 102, 110 (E.D. Pa. 2005) (quoting *Mosaid*

*Techs., Inc. v. Samsung Elecs. Co., Ltd.*, 348 F. Supp. 2d 332, 335 (D.N.J. 2004)). "Until recently, district

courts in the Third Circuit relied on both the Federal Rules of Civil Procedure and the inherent

authority of the court in imposing sanctions for spoliation of any kind of evidence. In 2015,

however, Federal Rule of Civil Procedure 37 was amended to provide a uniform standard governing

spoliation sanctions for the loss of electronically stored information. The Supreme Court

promulgated amended Rule 37(e) in recognition of 'the serious problems resulting from the

continued exponential growth in the volume of [electronically stored] information.'" *Bistrian v. Levii*,

448 F. Supp. 3d 454, 464 (E.D. Pa. 2020) (citing Fed. R. Civ. P. 37(e) advisory committee's note to

2015 amendment). "Where the amended rule applies, it provides the exclusive remedy for spoliation

of electronically stored information ('ESI'), foreclosing reliance on the court's inherent authority."

*Id.*; *see also Accurso v. Infra-Red Servs., Inc.*, 169 F. Supp. 3d 612, 618 (E.D. Pa. 2016) (Rule 37(e)

"specifically addresses the applicability of sanctions for spoliation of electronically stored information.").

Digital video evidence qualifies as ESI, so Rule 37(e) applies to determine whether spoliation has occurred. *Bistrian*, 448 F. Supp. 3d at 467. Amended Rule 37(e) provides that spoliation occurs where ESI "that should have been preserved in the anticipation or conduct of litigation is lost because a party failed to take reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery." Fed. R. Civ. P. 37(e). The elements of spoliation are first, "the spoliating party was under a duty to preserve when the loss occurred," second, "the lost ESI was within the scope of the duty to preserve," third, "the information was lost because the party failed to take reasonable steps to preserve" it, and fourth, "because ESI 'often exists in multiple locations,' spoliation occurs only where the information is truly lost and not recoverable elsewhere." *Bistrian*, 448 F. Supp. 3d at 465 (quoting Fed. R. Civ. P. 37(e) advisory committee's note to 2015 amendment).

If spoliation occurred, then the court must determine what sanction to impose. *See Bull v. United Parcel Service, Inc.*, 665 F.3d 68, 73 n. 5 (3d Cir. 2012). Rule 37(e) provides that "(1) upon finding prejudice to another party from loss of the information, [the court] may order measures no greater than necessary to cure the prejudice; or (2) only upon finding that the party acted with the intent to deprive another party of the information's use in the litigation [the court] may: (A) presume that the lost information was unfavorable to the party; (B) instruct the jury that it may or must presume the information was unfavorable to the party; or (C) dismiss the action or enter default judgment."

The Third Circuit has set out three factors for courts to consider in contemplating spoliation sanctions:

> (1) the degree of fault of the party who altered or destroyed the
> evidence; (2) the degree of prejudice suffered by the opposing party;
> and (3) whether there is a lesser sanction that will avoid substantial
> unfairness to the opposing party and, where the offending party is
> seriously at fault, will serve to deter such conduct by others in the
> future.

*GN Netcom, Inc. v. Plantronics, Inc.*, 930 F.3d 76, 82 (3d Cir. 2019) (quoting *Schmid v. Milwaukee Elec.*

*Tool Corp.*, 13 F.3d 76, 79 (3d Cir. 1994)).  These factors remain applicable to motions governed by

the amended Rule 37(e). *Bistrian*, 448 F. Supp. 3d at 466 (citing *id.*).

IV.     Analysis

The Court finds that spoliation did occur when the DOC failed to preserve the additional

video evidence; however, the Court also finds that sanctions are unwarranted and inappropriate

under the present facts.  Addressing spoliation first, Rule 37(e) incorporates the common-law 'duty

to preserve relevant information when litigation is reasonably foreseeable.'" *Bistrian,* 448 F. Supp. 3d

at 467-68 (citing Fed. R. Civ. P. 37(e) advisory committee's note to 2015 amendment.).  A party "is

under a duty to preserve what it knows, or reasonably should know, will likely be requested in

reasonably foreseeable litigation." *Mosaid Technologies Inc. v. Samsung Electronics Co., Ltd.*, 348 F. Supp.

2d 332, 336.   This is an objective test, asking "whether a reasonable party in the same factual

circumstances would have reasonably foreseen litigation." *Micron Tech., Inc. v. Rambus Inc.*, 645 F.3d

1311, 1320 (Fed. Cir. 2011).  Here, the Defendants were on notice that litigation was reasonably

foreseeable because Martin filed a grievance in the immediate aftermath of the use of force and

destruction of property incident he complains of, and prison grievances routinely lead to litigation.

*See Bistrian*, 448 F. Supp. 3d at 467-68 (holding prison had duty to preserve video of guard's

interaction with plaintiff's attacker in failure to protect case).  Additionally, the Defendants here *did*

preserve other videos of this incident recorded by two separate cameras, further evincing the

reasonableness of anticipating litigation here. Defendants even conducted their own internal

investigation into Martin's allegations after the use of force. Consequently, the Court concludes that

the Defendants were under a duty to preserve the now-lost video from the stationary camera before

it was automatically overwritten thirty days after the incident.

Turning to whether spoliation sanctions are appropriate, the Court is to consider the three

factors identified by the Third Circuit. *See GN Netcom, Inc.*, 930 F.3d at 82. First, the Court

examines "the degree of fault of the party who altered or destroyed the evidence." *Id.* Finding that

a party acted "with the intent to deprive another party of the information's use in the litigation"

under Rule 37(e), in other words, a finding of bad faith, may warrant an inference that the lost

information was unfavorable to the party, among other more severe sanctions. Circumstantial

evidence may evince intent. *Bistrian*, 448 F. Supp. at 475.

Here, there is no evidence of bad faith. No evidence in the record supports that any of the

Defendant affirmatively deleted the video. In their Status Report on November 10, 2020, the

Defendants acknowledge that there was a camera mounted to the outside of Martin's cell. ECF No.

131, ¶ 4. This video was not preserved because the prison only retains videos for thirty days per its

video policy, and then they are automatically overwritten because of limited storage space. Indeed,

"automatic overwriting is generally less culpable than affirmative deletion, which in turn is less

culpable than taking additional steps to erase backup copies." *Bistrian*, 448 F. Supp. at 475. *See*

*Cignex Datamatics, Inc., v. Lam Research Corp.*, 2019 WL 1118099, at *4-5 (D. Del. Mar. 11, 2019)

(issuing no sanctions because there was no bad faith when emails were automatically erased emails

per company policy when employee left and there was no evidence of the email's contents to show

prejudice).

The Defendants state that videos are ordinarily preserved when an inmate alleges wrongdoing.  ECF No. 131, ¶ 7.  However, apparently DOC policy or practice is that when there is a handheld camera on site, as here, the stationary camera video is not preserved.  The DOC justifies this policy or practice based upon the superior quality of the evidence recorded by the hand-held camera, which shows the entire incident, is in color, and has audio.  The stationary video, by contrast, is in black and white with no audio.  ECF No. 131, ¶¶ 7–9.  Upon its own review of the videos of the incident already in the record, the Court concurs that the handheld video appears to show the entire incident and comports with the explanation the Defendants provided.

It is also relevant to the finding of the degree of fault that the Court finds no history of dilatoriness here.[1]  In fact, the Defendants have repeatedly cooperated with Martin when he asserted that certain discovery materials were lacking.  For example, in an early round of discovery disclosures, the Defendants provided Martin with video evidence from the handheld camera and the DIVAR surveillance camera.  Martin filed a "Motion for an Order Compelling Discovery and Sanction Request" [ECF No. 109] when there were difficulties playing audio and video from some of the discs. At the hearing held on this motion on October 27, 2020, "counsel for Defendants advised that, on October 20, 2020, he sent four new discs of the recordings in question" and instructions on how to play them for Martin to view at the prison.  ECF No. 122, p. 1 (order on motion to compel at ECF No. 109).  Gina Orlando, a DOC employee, showed Martin these videos, but Martin filed a new motion for sanctions on November 2 because he said one of the multiple discs was blank.  ECF Nos. 125, 125-2.  Two days later, counsel for the Defendants looked again at DVD copies of the videos which had been sent to SCI-Phoenix, found functioning video and audio,

---

[1] Although a history of dilatoriness is one of at least six factors to be considered when the motion for sanctions seeks dismissal (which Martin's motions do not), the Court here finds it instructive to the analysis of the party's degree of fault, intent, or bad faith. *Cf. Poulis v. State Farm Fire and Casualty Co.*, 747 F.2d 863, 868 (3d Cir. 1984).

extracted video files from discs 2 and 3, burned new copies onto DVDs, and mailed those to Martin with instructions on how to play them.  ECF No. 131, ¶¶ 14–16.  In Martin's four filings to the Court since that date, he made no mention of viewing the latest replacement videos.  He continues to allege that his prior issues viewing them warrant sanctions.  ECF Nos. 132–135.  Martin does, however, acknowledge that Defendants' counsel sent another package to him on November 4, 2020, with video of the incident.  ECF No. 135.  ¶ 17.  In all, counsel for the Defendants has sent the videos to the prison three times; he has promptly provided new copies and instructions to play them when Martin had difficulty viewing them.  This responsiveness belies any dilatoriness on the part of counsel and obviates concern that bad faith played a role here.

The second factor a court must address is "the degree of prejudice suffered by the opposing party."  *GN Netcom, Inc.*, 930 F.3d at 82.[2]  "Prejudice to opposing parties requires a showing [that] the spoliation 'materially affect[ed] the substantial rights of the adverse party and is prejudicial to the presentation of his case.'"  *Magnetar Techs. Corp. v. Six Flags Theme Park Inc.*, 886 F. Supp. 2d 466, 481 (D. Del. 2012) (quoting *Micron Tech.*, 645 F.3d at 1328).  The moving party must offer "plausible, concrete suggestions as to what [the lost] evidence might have been."  *GN Netcom, Inc.*, 930 F.3d at 83 (citing *Schmid v. Milwaukee Elec. Tool Corp.*, 13 F.3d 76, 79 (3d Cir. 1994).  When the moving party cannot or does, "there should be no finding of prejudice."  *See id.*

Here, the Court finds no prejudice. While the Court understands Martin's desire for more evidence, the Defendants have provided to him the handheld video; upon the Court's review, this video captures the incident and events at issue.  The videos vary in quality: the hand-held video is in color with audio while the stationary video is in black and white with no audio.  ECF No. 131, ¶¶ 7–9.  "An evaluation of prejudice from the loss of information necessarily includes an evaluation of the

---

[2] In the absence of bad faith, lesser sanctions may be appropriate upon a finding of "prejudice to another party from loss of the information." Fed. R. Civ. P. 37(e)(1).

information's importance in the litigation." (2015 Advisory Committee Notes Rule 37(e)).  When videos in the record show the whole incident, having an additional camera angle is of diminished importance.  Furthermore, Martin provides no proffer as to what the absent video would show.  *See Percella v. City Bayonne*, 2020 WL 6559203, at *11 (D.N.J. Nov. 9, 2020) (finding no prejudice when moving party failed to explain what lost text messages would show or how they would disprove plaintiff's claims).  Here, the Court finds no prejudice.

The third factor a court must address is "whether there is a lesser sanction that will avoid substantial unfairness to the opposing party and, where the offending party is seriously at fault, will serve to deter such conduct by others in the future."  *GN Netcom, Inc.*, 930 F.3d at 82.  Because the Defendants are not seriously at fault, the Court need not consider whether a sanction for general deterrence is appropriate. Moreover, because the Court finds no bad faith or prejudice, there is no need to choose between different sanctions on the Defendants.

V.      Standard of Review for Motion for Appointment of Counsel

Martin also requests appointment of counsel.  In *Tabron v. Grace*, 6 F.3d 147 (3d Cir. 1993), the Third Circuit identified factors to be considered by the district courts in exercising their discretion whether to "appoint" counsel under 28 U.S.C. § 1915(d).[3]  These factors remain the applicable standard for review of requests for counsel in civil cases.  *See, e.g.*, *Montgomery v. Pinchak*, 294 F.3d 492 (3d Cir. 2002).  "As a threshold matter, a district court must assess whether the claimant's case has some arguable merit in fact and in law."  *Tabron* at 155.  The court should not

---

[3] Although 28 U.S.C. § 1915(d) does not authorize the court to "appoint" counsel, it authorizes the court to "request" an attorney to represent a litigant who is unable to employ counsel on his or her own.  The importance of the distinction was recognized by the Supreme Court in *Mallard v. United States District Court*, 490 U.S. 296 (1989).

appoint counsel unless the claim has some merit.  *Id.*  Provided that this consideration is satisfied, the court must then consider these factors to determine whether to appoint counsel:

1.    the plaintiff's ability to present his or his own case;

2.    the difficulty of the particular legal issues;

3.    the degree to which factual investigation will be necessary and the ability of the plaintiff to pursue investigation;

4.    the plaintiff's capacity to retain counsel on his or his own behalf;

5.    the extent to which a case is likely to turn on credibility determinations, and;

6.    whether the case will require testimony from expert witnesses.

*Montgomery*, at 499 (quoting *Tabron* at 155-157).

        The Third Circuit has also recognized that there are significant practical restraints on the district court's ability to "appoint" counsel, including: "the ever-growing number of prisoner civil rights actions filed each year in the federal courts; the lack of funding to pay appointed counsel; and the limited supply of competent lawyers who are willing to undertake such representation without compensation." *Tabron*, 6 F.3d at 157. There are also many cases in which district courts seek to appoint counsel but find no attorney willing to accept the appointment:

> [T]he frequent unwillingness of lawyers to accept appointment in such cases is not only a function of the time pressures lawyers face in trying to earn a living in an increasingly competitive filed, but also by circulating knowledge of the indignities that some lawyers have been subjected to by certain litigants, including verbal and written abuse, excessive demands and complaints, and malpractice suits. We trust the district judges will be sensitive to such problems in making discretionary decision in the area.

*Id.* at 157 n. 7.  The *Tabron* Court also recognized that volunteer lawyer time is extremely valuable and a district court should not request counsel under § 1915 indiscriminately:

> Volunteer lawyer time is a precious commodity … Because this resource is available in only limited quantity, every assignment of a volunteer lawyer to an undeserving client deprives society of a volunteer lawyer available for a deserving cause. We cannot afford that waste.

*Id.* at 157.

While this Court would no doubt benefit from having capable, experienced counsel available to assist and advise all prisoners before they file suit and to represent all prisoner plaintiffs who survive dismissal (under 28 U.S.C. § 1915(e) or for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure), there are simply not enough attorneys in this District who are willing to undertake such representation. Besides the factors discussed by the Court of Appeals, this Court recognizes other factors that dissuade attorneys from representing prisoners. Simply interviewing a prisoner client requires a trip to a prison, sometimes at a great distance from the lawyer's office, and frequently a long wait at the prison until the prisoner can be produced for the interview.

The number of attorneys in this District who are available to volunteer to represent prisoners is limited while the number of prisoners who request counsel is high. Moreover, the Erie division of this District does not have a referral system in place, as does the Pittsburgh division, and few attorneys in the local Bar have expressed a willingness to handle these cases. Therefore, this Court must carefully consider all the factors identified by the Court of Appeals as well as any other considerations related to the specific case in exercising its discretion when considering a motion for the "appointment" of counsel.

VI.     Analysis of Appointment of Counsel

In his *pro se* Complaint, Plaintiff alleges claims under the First, Sixth, Eighth, and Fourteenth Amendments as well as claims for retaliation and conspiracy for a series of events arising out of a

use of force against him on May 29, 2018 while he was incarcerated at State Correctional Institution Forest (SCI-Forest).  ECF No. 5, pp. 1–3.  At this stage of the litigation, it is too early to discern whether these claims have any merit.  For purposes of this motion, however, the Court will assume that Plaintiff's claims are potentially meritorious and address his request under the six *Tabron* factors.

The first factor—the Plaintiff's ability to present his own case—weighs against appointment of counsel.  While the Complaint is not perfect in its grammar and structure, Plaintiff's submissions to the Court reveal that he is nonetheless literate and articulate.  His Complaint is neatly handwritten, shows an understanding of the basis for his claims, and cites the constitutional rights, case law, and statutory provisions which he believes have been violated.  He attached multiple documents to his Complaint to support his claims.  Other submissions are neatly handwritten or typed.  Each of these suggests that Plaintiff possesses the ability to present his own case, particularly at this stage in the litigation.  *See Montgomery*, 294 F.3d at 501 (identifying several factors to consider with respect to a plaintiff's ability to present his case, including: "the plaintiff's education, literacy, prior work experience, and prior litigation experience, along with a plaintiff's ability to understand English and the restraints placed upon a prisoner plaintiff by confinement.").

Although it is early in this litigation, Plaintiff's claims do not appear to present any particularly difficult legal issues.  Thus, the second *Tabron* factor also weighs against appointment of counsel.  As for the remaining *Tabron* factors, the Court notes that practically every case that proceeds to discovery involves a reasonable amount of factual investigation.  Plaintiff's claims, however, do not appear to require expert testimony, particularly complex credibility determinations, or unusually burdensome discovery.  Moreover, as a *pro se* litigant, Plaintiff will have the benefit of *Haines v. Kerner*, 404 U.S. 519 (1972), and its progeny.  *See id.* at 520-21 (instructing that *pro se* pleadings should be held to less stringent standards than formal pleadings drafted by lawyers).  This

12

may be of more benefit to his than an attorney who is unfamiliar with the types of issues presented in prison litigation.

Given the foregoing, the Court concludes that the *Tabron* factors weigh against the appointment of counsel at this stage in the litigation.  Plaintiff's motion for appointment of counsel (ECF No. 124) is therefore **DENIED**, without prejudice.  Plaintiff may renew his motion, if he so desires, should his claims continue to remain viable at later stages of this litigation.  Furthermore, Martin's motions for sanctions are DENIED.

It is so ordered.

_____

RICHARD A. LANZILLO
UNITED STATES MAGISTRATE JUDGE

Entered this 25th day of November, 2020